UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

                                       **MEMORANDUM & ORDER**
            - against -                            14-CR-567 (MKB)

CLIVE DAVIS,

                     Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Defendant Clive Davis pleaded guilty to a one-count indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Indictment dated October 23, 2014, Docket Entry No. 6.) According to the addendum to the Pre-sentence Investigation Report and the Government, Davis is subject to a mandatory minimum sentence of fifteen years pursuant to 18 U.S.C. § 924(e)(1) of the Armed Career Criminal Act of 1984 ("ACCA")[1] because of his prior state felonies for (1) conspiracy to possess with intent to distribute a controlled substance, (2) attempted robbery in the third-degree under New York state law,[2] and (3) conspiracy and attempt to commit robbery in the first-degree under Connecticut state law.[3] (PSR Addendum, Docket Entry No. 39; Gov. Letter dated June 15, 2018, ("Gov.

---

[1] The ACCA provides that a person "shall be . . . imprisoned not less than fifteen years" if they have been convicted of possessing a firearm with a prior felony conviction, pursuant to 18 U.S.C. §922(g), and have "three previous convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. §924(e)(1).

[2] *See* N.Y. Penal Law § 160.05 (third-degree robbery); N.Y. Penal Law § 110.00 (attempt).

[3] *See* Conn. Gen. Stat. §§ 53a-48(a) (conspiracy), 53a-49 (attempt), 53a-134(a)(3) (first-degree robbery for use or threatening the use of a dangerous instrument).

Letter"), Docket Entry No. 40.) Davis asserts that section 924(e)(1) is inapplicable, arguing that his robbery offenses are not violent felonies within the meaning of the ACCA. (Def. Letter dated June 7, 2018, ("Def. Letter"), Docket Entry No. 38.) For the reasons stated on the record on June 19, 2018,[4] and below, the Court determines that third-degree robberies under New York Penal Law § 160.05 are not violent felonies within the meaning of the ACCA.

## I. Background

Defendant challenges the applicability of section 924(e)(1) by asserting that his (1) 1998 conviction for attempted third-degree robbery under New York law, and (2) 2004 convictions for conspiracy and attempt to commit robbery in the first-degree under Connecticut law are not violent felonies within the meaning of the ACCA.[5] (Def. Letter 1.) Because the Connecticut conspiracy and attempt offenses were committed on the same occasion, those convictions are treated as one for purposes of section 924(e)(1). *See United States v. Bordeaux*, 886 F.3d 189, 195 (2d Cir. 2018) ("Under our precedents, a defendant's prior convictions are deemed convictions for offenses 'committed on occasions different from one another,' only if the defendant committed the offenses in distinct 'criminal episodes.'" (citations omitted)); 18 U.S.C. § 924(e)(1) (requiring offenses to be "committed on occasions different from one another").

Defendant thus correctly argues that the mandatory minimum imposed by section 924(e)(1) would not apply if either *set* of convictions do not qualify as a violent felony. (Def.

---

[4] The Court held a sentencing hearing on June 19, 2018, and provided both parties with an opportunity for further argument. (Minute Entry dated June 19, 2018.) The Court also informed the parties that a written decision, detailing the decision made at the hearing, was forthcoming. (*Id.*)

[5] Defendant concedes that his prior conviction of conspiracy to possess with intent to distribute a controlled substance is a serious drug offense and therefore qualifies as a predicate under ACCA. (Def. Letter dated June 7, 2018 ("Def. Letter") 1 n.1, Docket Entry No. 38.)

2

Letter 13.) Consequently, for section 924(e)(1) to be applicable, both the 1998 New York conviction and at least one of the 2004 Connecticut convictions must be violent felonies.[6]

## II. Relevant statutory framework

### a. Section 924(e)

Section 924(e)(1) applies to a conviction under 18 U.S.C. § 922(g)(1) "if the defendant has three previous convictions in state or federal court for 'serious drug offense[s]' or 'violent felon[ies].'" *Stuckey v. United States*, 878 F.3d 62, 64 (2d Cir. 2017) (quoting 18 U.S.C. § 924(e)(1)). A violent felony is defined as:

> any crime punishable by imprisonment for a term exceeding one year . . . that — (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is [one of several enumerated offenses], or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B). This case only concerns 18 U.S.C. § 924(e)(2)(B)(i), known as the "force" or "elements" clause. *See Stuckey*, 878 F.3d at 68; *Villanueva v. United States*, --- F.3d ---, ---, 2018 WL 3077064, at *1 (2d Cir. June 22, 2018). As to that clause, "the phrase 'physical force' means *violent* force — that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*2010 Johnson*").

### b. New York Penal Law §§ 160.00, 160.05

Defendant challenges the characterization of his third-degree robbery conviction, defined as "forcibly steal[ing] property," pursuant to New York Penal Law § 160.05. A person forcibly steals property when:

> in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose

---

[6] The Government acknowledged at the hearing that it was no longer pursuing the conspiracy conviction under Connecticut law as a violent felony within the meaning of the ACCA.

3

of:

> 1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
>
> 2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

N.Y. Penal Law § 160.00.[7] Convictions for third-degree robberies are also categorized as class D felonies. *Id.* Accordingly, the relevant inquiry is whether "forcibly steal[ing]" requires violent force as defined by *2010 Johnson*.

### III. Convictions under New York Penal Law § 160.05 are not violent felonies

Defendant asserts that convictions pursuant to New York Penal Law § 160.05 are not violent felonies within the meaning of the ACCA because the statute does not necessarily require the application of *violent* force. (Def. Letter 5.) Although the Second Circuit held otherwise in *United States v. Brown*, 52 F.3d 415 (2d Cir. 1995), Defendant argues that caselaw predating *2010 Johnson* "is no longer good law." (Def. Letter 6.) Defendant contends that the Second Circuit "did not have the benefit of the Supreme Court's interpretation of the term 'physical force'" in holding third-degree robberies to be violent felonies in *Brown*. (*Id.*) Moreover, Defendant argues that the Second Circuit has itself recognized the abrogation of its pre-*2010 Johnson* decisions, including specifically as to third-degree robberies, albeit in the context of crimes of violence.[8] (*Id.* at 7 (citing *United States v. Jones*, 878 F.3d 10, 21 (2d Cir. 2017))).

---

[7] New York Penal Law § 110.00 provides that "[a] person is guilty of an attempt to commit a crime, when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."

[8] Caselaw interpreting crimes of violence under the Sentencing Guidelines are "highly persuasive" in determining whether crimes are violent felonies under the ACCA. *See United States v. Reyes*, 691 F.3d 453, 458 n.1 (2d Cir. 2012).

Relying on examples of convictions for forcible stealing based on the formation of a "human wall, bumping . . . or a brief tug-of-war," Defendant contends that third-degree robberies, applying the reasoning of *2010 Johnson*, are not violent felonies. (*Id.* at 5–6.)

The Government argues that convictions under New York Penal Law § 160.05 are categorically violent felonies because they necessarily entail the use of violent force. (Gov. Letter 4.) The Government contends that *Brown* remains binding authority, and has been reaffirmed post-*2010 Johnson* by *United States v. Miles*, 748 F.3d 485, 490 (2d Cir. 2014). (Gov. Letter 5–6.) In addition, the Government argues that the Second Circuit has "repeatedly" held second-degree robberies to be violent felonies under New York law based on the same element of forcible stealing. (*Id.*) The Government also contends that the examples Defendant provides are unpersuasive, arguing that they inherently involve either *threatened* use of violent force or sufficient quantum of force *capable* of causing physical pain or injury. (*Id.* at 8–10.)

### a. There is no binding authority in the Second Circuit

Whether third-degree robbery under New York law has as an element the requisite violent force to satisfy *2010 Johnson* remains an open question in the Second Circuit. *See Stuckey*, 878 F.3d at 67 n.6. Although some courts continue to apply *Brown* in the absence of contrary circuit authority,[9] a district court is bound by a Supreme Court ruling that so undermines Second Circuit precedent that it will almost inevitably be overruled. *See Austin v. United States*, 280 F. Supp. 3d 567, 572 (S.D.N.Y. 2017) ("When 'a subsequent decision of the Supreme Court so undermines [Second Circuit precedent] that it will almost inevitably be overruled,' the [d]istrict [c]ourt is bound by the Supreme Court's ruling and not by the Second Circuit's prior decisions." (citation

---

[9] *See Brunstorff v. United States*, No. 16-CV-912, 2017 WL 5906611, at *9 (D. Conn. Nov. 30, 2017) (collecting cases).

5

omitted)). Post-*2010 Johnson*, in a since-vacated opinion addressing the force clause as to crimes of violence, the Second Circuit determined that "'forcible stealing' alone does not necessarily involve the use of 'violent force.'" *United States v. Jones*, 830 F.3d 142, 149 (2d Cir. 2016), *withdrawn from bound volume*, *vacated*, 838 F.3d 296 (2d Cir. 2016). Although *Jones* was vacated and later resolved on other grounds,[10] the concurring panelists in the subsequent decision reaffirmed that decisions pre-*2010 Johnson*, at least in the context of crimes of violence, have been abrogated. *See United States v. Jones*, 878 F.3d 10, 21 (2d Cir. 2017) (J. Calabresi, concurring) (noting that prior circuit precedent in *United States v. Spencer*, 955 F.2d 814, 820 (2d Cir. 1992), holding that attempted third-degree robberies constitute "crime[s] of violence" for the purposes of the "force clause" of the Sentencing Guidelines, had been abrogated by *2010 Johnson*). Consistent with this understanding of the significance of *2010 Johnson*, in *Stuckey*, the Second Circuit declined to address "whether . . . 'forcible stealing' requires the degree of force mandated by the 2010 *Johnson* decision," as applied to violent felonies. *Stuckey*, 878 F.3d at 67 n.6. The Second Circuit's statement in *Stuckey* indicates that *Brown* is no longer binding or has been abrogated by *2010 Johnson*.[11]

---

[10] The Second Circuit vacated the prior *Jones* decision for reasons unrelated to its prior reasoning regarding the force clause and violent force. *See United States v. Jones*, 878 F.3d 10 (2d Cir. 2017).

[11] Defendant also argued that his convictions for attempts or conspiracy to commit robberies should be analyzed without consideration of the elements of the underlying offense for purposes of section 924(e)(1). (Def. Letter 11–12.) The Government argued that convictions for attempts require defendants to have "intend[ed] and take[n] steps towards employing the use or threatened use" of violent force, and that the ACCA specifically includes "attempted use" in its definition of violent force. (Gov. Letter 12.) Having declined to pursue the conspiracy conviction for robbery as a violent felony, the Government did not provide any argument as to conspiracies. (*See generally id.*) The Second Circuit, as well as other circuits, have assumed that the proper analysis for attempt convictions requires consideration of the elements of the underlying offenses. *See United States v. Bennett*, 604 F. App'x 11, 15–16 (2d Cir. 2015) ("The

6

The Government's reliance on *Miles*, 748 F.3d at 490, and non-precedential summary orders is misplaced. In *Miles*, the defendant "acknowledge[d] that robbery in the third-degree 'has as an element the use, attempted use, or threatened use of physical force,'" and instead argued that his conviction should not be considered a violent felony because he had been sentenced to less than one year. *Miles*, 748 F.3d at 490. Likewise, the summary orders,[12] while citing favorably to *Brown* or agreeing with its holding, do not analyze the element of "forcibly stealing" by applying the definition of violent force provided in *2010 Johnson*. *See Austin*, 280 F. Supp. 3d at 571–72 ("[A] review of the briefs in these subsequent, non-precedential cases shows that the defendants in these cases did not even make the argument based on [*2010*] *Johnson*."); *United States v. Johnson*, 220 F. Supp. 3d 264, 271 (E.D.N.Y. 2016) ("[A]ll of the cases upon which the Government relies were either decided prior to [*2010 Johnson*], or are non-precedential summary orders, which do not undertake an analysis of robbery in New York

---

certificates reported [the defendant's] convictions for attempted robbery in the first degree, *see* N.Y. Penal Law § 160.15 . . . crimes for which a requisite element was 'the use, attempted use, or threatened use of physical force against the person of another.'"); *United States v. Bogle*, 522 F. App'x 15, 19 (2d Cir. 2013) ("The district court did not err in concluding that Bogle's attempted robbery conviction constituted a violent felony."); *United States v. Williams*, 526 F. App'x 29, 37 (2d Cir. 2013) (holding that second-degree attempted robbery, in violation of New York Penal Law § 160.10, "qualif[ies], categorically, as [a] violent felon[y] under the Armed Career Criminal Act."); *see also Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017) (expressly holding that attempt crimes should be assessed by looking to the underlying offense for purposes of the ACCA). Whether conspiracies should also be assessed by looking to the underlying offense is a more difficult question. *See Johnson v. United States*, No. 16-CV-00215, 2016 WL 7362764, at *6 (D. Conn. Dec. 19, 2016) (collecting cases on issue); *see also United States v. Wiggan*, 530 F. App'x 51, 56 (2d Cir. 2013) (declining to consider whether conspiracy to commit robbery was a violent felony within the meaning of the ACCA). Because the Government did not pursue the conspiracy conviction, the Court declines to address the question as to conspiracies.

[12] *See Williams v. United States*, 712 F. App'x 50 (2d Cir. 2017); *United States v. Kornegay*, 641 F. App'x 79, 85 (2d Cir. 2016); *Belk v. United States*, No. 16-765, 2016 WL 1587223, *1-2 (2d Cir. Apr. 19, 2016); *United States v. Williams,* 526 F. App'x 29 (2d Cir. 2013); *United States v. Bogle*, 522 F. App'x 15 (2d Cir. 2013).

pursuant to the Supreme Court's definition of 'force' in [*2010 Johnson*]." (citations omitted)). Furthermore, all the decisions cited by the Government were decided prior to *Stuckey*, a binding published opinion, which explained that the issue remains unresolved in the Second Circuit. *See Stuckey*, 878 F.3d at 67 n.6. Consequently, in the absence of binding authority, the Court must determine whether forcibly stealing constitutes violent force within the meaning of the ACCA.

### b. The Court applies the categorical approach

"To determine whether an offense is a [violent felony], courts employ what has come to be known as the 'categorical approach.'" *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (citation omitted); *Villanueva*, --- F.3d at ---, 2018 WL 3077064, at *4. Under this approach, courts "first identify the elements of the statute forming the basis of the defendant's conviction." *Bordeaux*, 886 F.3d at 193 (citation omitted). "In doing so, [courts] examine what is the minimum criminal conduct necessary for conviction under [that] particular [state] statute, mindful that there must be a realistic probability . . . that the State would apply its statute to conduct that constitutes the minimal criminal activity necessary for a conviction." *Stuckey*, 878 F.3d at 67 (citations and internal quotation marks omitted). "After identifying the elements of the offense, [courts] compare the minimum conduct necessary for a state conviction with the conduct that constitutes a violent felony under the ACCA." *Bordeaux*, 886 F.3d at 193 (citation and internal quotation marks omitted). "If the state statute sweeps more broadly — *i.e.*, it punishes activity that the federal statute does not encompass — then the state crime cannot count as a predicate violent felony for the ACCA's fifteen-year mandatory minimum." *Id.* (citation and internal quotation marks omitted).

"In some instances, an additional step is required because a 'statute[ ] . . . ha[s] a more complicated (sometimes called 'divisible') structure . . . . " *Stuckey*, 878 F.3d at 67. "A divisible

statute 'sets out one or more elements of the offense in the alternative.'" *Hill*, 890 F.3d at 55 n.6 (citation omitted). "If some but not all of the alternative elements would amount to a [violent felony], a court can 'modify' the categorical approach by looking at a limited set of documents, including the indictment, to consider under which portion of the statute the defendant was charged." *Id.* (citation omitted); *Stuckey*, 878 F.3d at 67 ("This approach is known as the modified categorical approach."). "After determining which portion was at issue, a court then applies the categorical approach to that part of the challenged statute." *Hill*, 890 F.3d at 55 n.6 (citation omitted).

The parties agree that the categorical approach applies to Defendant's conviction for attempted third-degree robbery under New York law. (Gov. Letter 3; Def. Letter 3.) Because New York Penal Law § 160.05 is indivisible, there is also no need for a modified-categorical approach.

### i. *2010 Johnson*'s definition of violent force incorporates the reasoning from *Flores v. Ashcroft*, 350 F.3d 666 (7th Cir. 2003)

The Supreme Court has defined violent force as "force *capable* of causing physical pain or injury to another person." *2010 Johnson*, 559 U.S. at 140 (emphasis added). Construing the definition strictly, the Sixth and Eleventh Circuits have applied a broad interpretation of the term "capable." *See Perez v. United States*, 885 F.3d 984, 990 (6th Cir. 2018) (holding that a human wall constitutes sufficient violent force in the form of threats "'*capable* of causing physical pain or injury,' which is all the statute requires" (citation omitted)); *United States v. Vail-Bailon*, 868 F.3d 1293, 1300 (11th Cir. 2017) (holding that *2010 Johnson* requires "force that is 'capable' of causing physical pain or injury" rather than "force that is 'likely to cause pain'"). Because of the broad definition of what is *capable* of causing physical pain or injury, the Sixth and Eleventh Circuits appear to employ a definition of violent force that applies to a wide range of conduct.

9

*See Perez*, 885 F.3d at 990; *United States v. Stokeling*, 684 F. App'x 870, 871 (11th Cir. 2017), *cert. granted*, 138 S. Ct. 1438 (2018).

This Court, however, finds a broad interpretation of the term "capable" unworkable and likely inconsistent with *2010 Johnson*. A slap, for example, may often carry with it "that degree of force necessary to inflict pain." *2010 Johnson*, 559 U.S. at 143. Yet in *2010 Johnson*, and *United States v. Castleman*, 572 U.S. ---, ---, 134 S. Ct. 1405, 1422 (Mar. 26, 2014), the Supreme Court explained that a slap *might* constitute violent force, suggesting that the mere possibility of physical pain or injury is insufficient.[13] *See 2010 Johnson*, 559 U.S. at 143; *Castleman*, 572 U.S. at ---, 134 S. Ct. at 1422 (J. Scalia, concurring) ("identifying 'a slap in the face' as conduct that might rise to the level of violent force" (quoting 2010 *Johnson*, 559 U.S. at 143)); *see also 2010 Johnson*, 559 U.S. at 146 (J. Alito, dissenting) (noting that a *sharp* slap in the face is sufficient to inflict physical pain or injury). The Supreme Court has also recognized that violent force, by its very terminology, signifies a "substantial degree of force," further supporting a narrower interpretation of the term "capable." *See 2010 Johnson*, 559 U.S. at 140 ("Even by itself, the

---

[13] In *2010 Johnson*, the Supreme Court discussed the possibility of a slap being violent force in rejecting the Government's contention that section 924(e)(2)(B)(i) should be construed as covering even the "merest touch." *Johnson v. United States*, 559 U.S. 133, 143 (2010). The Government had argued that because section 924(e)(2)(B)(i), unlike section 922(g)(8)(C)(ii), did not specify that "physical injury" must reasonably be expected to cause "bodily injury," the Supreme Court should draw an inference that the merest touch sufficed. Finding the Government's argument to be without merit, but without deciding the issue, the Supreme Court explained that the absence of the term "bodily injury" from 924(e)(2)(B)(i) could also logically be construed as requiring "only that degree of force necessary to inflict pain — a slap in the face, for example." *Id.* Despite recognizing that a slap may carry with it the "degree of force necessary to inflict pain," the Supreme Court did not find that slaps are examples of violent force. *Id.* The Supreme Court appears to have used the slap example primarily to point out the logical fallacy of the Government's argument, and not as an endorsement that slaps constitute violent force. *Id.* Indeed, in *Castleman*, Justice Scalia, the author of *2010 Johnson*, acknowledged in a concurrence that *2010 Johnson* had only held that a slap *might* be violent force. *United States v. Castleman*, 572 U.S. ---, ---, 134 S. Ct. 1405, 1422 (Mar. 26, 2014) (J. Scalia, concurring).

word "violent" in § 924(e)(2)(B) connotes a substantial degree of force."); *Castleman*, 572 U.S. at ---, 134 S. Ct. at 1412 (explaining that "[m]inor uses of force may not constitute 'violence' in the generic sense."). As *2010 Johnson and Castleman* suggest, capability cannot be defined broadly to encompass all conduct that might *possibly* cause physical pain or injury.

Rather than a mere possibility, the requisite force must "at a minimum [be] likely" to cause physical pain or injury. *See Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003). In defining violent force in *2010 Johnson*, the Supreme Court cited to *Flores*, a Seventh Circuit opinion. *See 2010 Johnson*, 559 U.S. at 143. At the referenced pincite, the Seventh Circuit defined violent force as "the sort that is intended to cause bodily injury, or at a *minimum likely to do so*." *Flores*, 350 F.3d at 672 (emphasis added). To determine whether any force is capable of causing physical pain or injury, one must inherently assess the likelihood of harm arising from the conduct in question. Slight touching does not constitute violent force because it is ordinarily unlikely to cause physical pain or injury. Punches or kicks, on the other hand, constitute violent force because they are ordinarily likely to cause physical pain or injury. In some cases, where the conduct is clearly likely or unlikely to cause physical pain or injury,[14] courts may not recognize they are applying this *likelihood* standard in determining whether certain conduct is *capable* of causing physical pain or injury. *See Vail-Bailon*, 868 F.3d at 1301 ("*Under normal circumstances*, a slight tap on the shoulder or a tickle might be offensive if it is unwanted, but it will not be capable of causing either pain or injury." (emphasis added)); *see also United States v. Jennings*, 860 F.3d 450, 457 (7th Cir. 2017) ("Similarly, any number of forceful acts beyond simple touching may *in context* suffice to inflict bodily harm upon a victim (or instill fear of such

---

[14] As the preceding examples indicate, there are many examples of conduct that clearly fall either within or out of the range of conduct that is likely to cause physical pain or injury.

harm)." (emphasis added)).  As these examples illustrate, the *likelihood* of pain or injury provides the basis to categorize conduct as either capable or incapable of causing physical pain or injury.

This definition of "capable" is also supported by *Webster's Third New International Dictionary* (1969).  *See United States v. Bove*, 888 F.3d 606, 608 (2d Cir. 2018) (relying in part on definitions from *Webster's Third New International Dictionary*).  Webster's provides several definitions, including the following: (1) "constituted, situated, or characterized as *susceptible* or open to being affected;" (2) "having sufficient power, prowess, intelligence, resources, strength, or other *needed* attributes to perform or accomplish;" and (3) "marked by or possessed of a *predisposition*."  *Conducive*, *Webster's Third New International Dictionary* (emphasis added).[15]  All three definitions hint at more than a mere possibility, and instead at an increased probability or likelihood.  Conduct that is intrinsically susceptible, necessary, or predisposed to physical pain or injury may be said to be *likely* to cause such harm.  Accordingly, the Court determines that violent felonies within the meaning of the ACCA require as an element the use, attempted use, or threatened use of force that is likely to cause physical pain or injury.  *See also United States v. Curry*, No. 17-CR-15, 2018 WL 1835907, at *3 n.2 (N.D. Ind. Apr. 18, 2018) (describing the *2010 Johnson* and *Flores* standards regarding violent force as "synonymous").

### ii. Third-degree robbery in New York is not a violent felony

Applying the above principles, the Court determines that third-degree robberies in New York are not violent felonies within the meaning of the ACCA.  Relying on the same caselaw Defendant provides, the majority of district courts in the Second Circuit have also determined that forcible stealing is not sufficient violent force within the meaning of the ACCA.  *See United*

---

[15] Webster's other definitions do not appear to be relevant.  *See Conducive*, *Webster's Third New International Dictionary* (1969).

*States v. Walker*, No. 15-CR-388, 2018 WL 2272714, at *10–11 (E.D.N.Y. May 17, 2018) (explaining district courts in the Second Circuit have so held in the context of violent felonies in reaching same conclusion in the context of crime of violence); *Austin*, 280 F. Supp. 3d at 574 ("The majority of district courts that have addressed the issue since [*2010*] *Johnson* have concluded that 'forcible stealing' in New York's robbery statute does not categorically involve violent force" (citations omitted)); *see also United States v. Steed*, 879 F.3d 440 (1st Cir. 2018) (holding that attempted second-degree robbery did not qualify as a crime of violence within the meaning of the Career Offender Guideline's force clause).

The Government's arguments to the contrary are unpersuasive. As an initial matter, the Court disregards the Government's use of hypotheticals. In their motion papers, the Government argues that "'a tug of war' over property may be brief because the robber wins easily, but a less forceful tug by the robber still threatens the use of violent force if the initial tug does not dislodge the property." (Gov. Letter 9.) The Government also argues that a "blocker," by impeding the path of victims trying to pursue a thief, implicitly threatens to "knock the pursuer over or take other physical actions to prevent pursuit."[16] (*Id.*); *see also Perez*, 885 F.3d at 990 ("[A] human wall may be unforceful by its nature. But it may well turn violent if the victim attempts to break through it."). However, the Supreme Court and the Second Circuit have discouraged the use of hypotheticals in assessing violent felonies or crimes of violence. *See*

---

[16] One district court in the Second Circuit has held that impeding the pursuit by a victim or engaging in a tug-of-war with some degree of force inherently includes an implicit threat of violent force. *See Belk v. United States*, No. 01-CR-180, 2017 WL 3614446, at *6 (S.D.N.Y. Aug. 22, 2017). The Court respectfully disagrees and declines to presume the threat of violent force in all such cases. *Cf. United States v. Nieves-Galarza*, 718 F. App'x 159, 163 (3d Cir. 2017) (holding New York Penal Law 160.15(4) to be a violent felony necessarily involving the threat of violent force because the New York Court of Appeals has interpreted the statute to require that the firearm be consciously displayed in a manner that could reasonably be perceived as threatening to a victim).

13

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) ("To show [a] realistic probability, an offender . . . must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues."); *Stuckey*, 878 F.3d at 67. Although courts have traditionally invoked this principle against Defendants, there is no principled basis not to extend the same rationale to the Government. Once a defendant proffers caselaw demonstrating a realistic probability that the State has applied its statute to non-violent force, the Government cannot then be "invit[ed] to apply 'legal imagination'" to come up with hypotheticals where violent force may theoretically have been involved. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). The discussion as to the minimum force criminalized by a state statute must be grounded in reality. *See id.*; *Stuckey*, 878 F.3d at 67. The Government, as well as defendants, must therefore limit their arguments to the facts of the relevant cases.

The facts of *People v. Bennett*, 631 N.Y.S.2d 834 (App. Div. 1995), support the conclusion that convictions based on forcible stealing do not require violent force. In *Bennett*, the defendant and three others "formed a human wall that blocked the victim's path as the victim attempted to pursue" a pickpocket. *Id.* Although threats may be non-verbal or slight in nature, *see Hill*, 890 F.3d at 59, the facts of *Bennett*, at least as recorded, do not evince a threat of violent force of any kind. There are no facts to indicate that the defendant or his accomplices would not have stepped aside at the demand of the victim or continued forward movement of the victim, having provided the pickpocket time to escape. *See also Austin*, 280 F. Supp. 3d at 575–76 ("When describing the affirmative acts of one person 'against another,' as in ACCA, a 'threat' means a 'communicated intent to inflict harm or loss on another,' or 'a declaration, express or implied, of an intent to inflict loss or pain on another.'" (quoting *Black's Law Dictionary* (10th ed. 2014)). Based on these facts, and without speculating as to other possibilities, the Court

14

cannot conclude that *Bennet* involved the use or threatened use of violent force capable or likely to cause physical pain or injury.

Likewise, the facts of *People v. Safon*, 560 N.Y.S.2d 552 (App. Div. 1990), also support the conclusion that convictions based on forcible stealing do not require violent force. In *Safon*, a store clerk "grabbed the hand in which [the] defendant was holding the money and the two tugged at each other until [the] defendant's hand slipped out of the glove holding the money." *Id.* Aside from this brief tug-of-war, involving only a modicum of force, there is no indication of any use or threat to use violent force. Based on these facts, without speculating, the Court cannot conclude that *Safon* involved the use or threatened use of violent force capable or likely to cause physical pain or injury. *See Austin*, 280 F. Supp. 3d at 573 (collecting other cases involving tug-of-wars with *de minimis* force); *see also Jones*, 830 F.3d at 149, (relying on *Bennett*, and *Safon* to determine that the element of forcible stealing did not require violent force), *withdrawn from bound volume*, *vacated*, 838 F.3d 296 (2d Cir. 2016); *Read v. New York State*, 199 F.3d 1323 (2d Cir. 1999) ("In and of itself, the act of pulling away can represent the force necessary to sustain petitioner's third-degree robbery conviction." (citing *Safon* 560 N.Y.S.2d at 552)). Accordingly, the Court determines that third-degree robberies under New York Penal Law § 160.05 are not violent felonies within the meaning of the ACCA.[17]

---

[17] Because the Court concludes that third-degree robbery under New York law does not constitute violent felony within the meaning of the ACCA, the Court finds it unnecessary to resolve whether first-degree robbery under Connecticut law is a violent felony within the meaning of the ACCA. *Cf. United States v. Wiggan*, 530 F. App'x 51, 57 (2d Cir. 2013) ("[F]irst degree robbery under Connecticut law falls squarely within the first prong of the definition of 'violent felony,' which covers offenses having 'as an element the use, attempted use, or threatened use of physical force against the person of another.'" (citation omitted)); *see also Stuckey v. United States*, 878 F.3d 62, 66 (2d Cir. 2017) (holding parallel subsection under New York law to be violent felony).

**IV. Conclusion**

For the foregoing reasons, the Court finds attempted robberies in the third-degree under New York law are not violent felonies within the meaning of the ACCA. Davis is therefore not subject to a mandatory minimum sentence of fifteen years pursuant to 18 U.S.C. § 924(e)(1).

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: June 22, 2018
      Brooklyn, New York